## SARAH HENRY ET AL. v. J. W. HUFF.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 16, 1891—Decided October 5, 1891.

[To be reported.]

(*a*) The plaintiffs in ejectment having shown title to a tract that included
the land in dispute, the defendant put in evidence a deed to himself from
plaintiffs' ancestor for a part of said tract.   The controversy was over
the location of one line, given in the deed as running from a stone cor-
ner on a boundary line of said tract, N. 34½° E., at right angles, across
said tract to another corner.

(*b*) The bearing given, N. 34½° E., and the statement that the line formed
a right angle with the line from which it started, were inconsistent.
Other circumstances showed that the bearing was a mistake.   The line
was described, also, as touching "the fence at the southeast part of the
improvement."   There were two clearings on the land of the grantor,
one on the northwest and the other on the southeast half thereof:

1. The burden of proof was on the defendant to show that the disputed
land was enclosed by the disputed line; and, as the lengths of the other
lines of the land conveyed to him were not given in the deed, and the
line in question was therefore to be located by the monuments called
for, the defence must fail if neither of the points, the corners at the
ends of the line and the intermediate fence, could be located by the
testimony.

2. The inconsistency in the description, being due to an evident mistake,
did not render the deed ambiguous; nor did proof of the existence of
two clearings develop a latent ambiguity, unless the testimony tended
to show the existence of two improvements, having each a fence at the
southeast part, either of which might answer the description of the
intermediate point given.

3. The improvement mentioned in the deed was presumably upon the
land conveyed; and, as the fence referred to as a monument must there-
fore be upon the southeast side of the improvement, proof that the line
claimed by defendant would touch a fence on the northwest side of a

Statement of Facts.

clearing, in the southeast part of the entire tract, admittedly not conveyed, did not exhibit a latent ambiguity.

4. A man cannot give a construction to a deed, or make a consentable line, by not dissenting from acts of which he had no knowledge; wherefore, the fact that the defendant, during a series of years after receiving his deed, cut timber from the land in controversy, could have no bearing on the true location of the line, in the absence of proof that the grantor and his successors had knowledge thereof.

5. References by counsel, in addressing a jury, to the wealth or poverty of the parties, to the strength of municipal or private corporations and the comparative helplessness of an individual citizen, are proper when made in a spirit of fairness, and for the purpose of stimulating the jury to a careful and conscientious discharge of duty.

6. But, when such references are made, and the changes are rung upon them for the evident purpose of inflaming the passions and prejudices of jurors, and leading them to disregard their duty, the actual facts and the legal rights of the parties, in the particular case, it is the duty of the judge, upon request, to interfere.

7. A party has the right to have the official stenographer enter upon his notes any objectionable remarks made by counsel in the argument. In this case, the record, so made of the words objected to, failing to exhibit the connection in which they were spoken, the Supreme Court assumed that the court below was right in declining to interfere.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 377 January Term 1891, Sup. Ct.; court below, No. 143 February Term 1885, C. P.

On January 27, 1885, Sarah Henry and others brought ejectment against John W. Huff, and Charles D. Huff, for eighteen acres of land in Kingston township. The defendants pleaded not guilty, but subsequently Charles D. Huff filed a disclaimer of title.

At the trial on December 8, 1890, it was admitted that Elisha Atherton had title, on December 30, 1847, to the whole of certified lot No. 26, in Kingston township, of which the land in dispute was a part. The plaintiffs, by various wills and deeds, traced title from Elisha Atherton to themselves. Then, having shown possession by the defendant of the land described in the writ, the plaintiffs rested.

The defendant put in evidence a deed from Elisha Atherton to John W. Huff, dated December 30, 1847, conveying a part of lot No. 26 by the following description:

Statement of Facts.

" That lot of land situate in the township of Kingston, beginning at a stone corner agreed on, on the line between lots Nos. 25 and 26; thence north, thirty-four and a half degrees east about forty-six rods, at right angles, so as to touch the fence at the southeast part of the improvement; thence to the line of lot No. 27 to a corner; thence along said line to the Fourth Division of land in Kingston, to a corner between lots 26 and 27; thence along said line to the corner of lots Nos. 25 and 26 to a corner; thence along said line south thirty-four and one half degrees east to the place of beginning, supposed to contain eighty acres of land, be the same more or less."

The land conveyed by this deed was at the northwest end of lot 26, a tract two miles long and forty-six rods wide, which, starting at its southeast end from what was known as the " main road," extended up the side and over the top of a mountain, its side lines being parallel with each other and running in the direction north thirty-four and one half degrees west. At the northwest end of tract 26 was a piece of woodland. Next to that, and on top of the mountain was a clearing, on which stood a house erected by Elisha Atherton. Then came another piece of woodland, on the mountain side, and below that a clearing extending to the Main Road, on which stood Atherton's homestead. The controversy in the case was as to whether the second piece of woodland above mentioned was embraced in the conveyance from Atherton to Huff, the dispute turning upon the proper location of the first of the lines given in the deed. See plan on the next page.

The defendant called two surveyors, who testified that they had run the line in question, starting at a place pointed out by Huff or his son, about the middle of the line between lots 25 and 26, and running thence, at right angles to said line, until they struck a pile of stones near a fence which enclosed the Atherton clearing, upon the northwest side thereof, and then on to the line of lot 27; that at their starting place they found a chestnut tree, about which some stones were piled, but they found no marked corner at the point on the line of lot 27 to which they ran; that, in their opinion, the land in dispute was within the lines of the deed from Atherton to Huff, and, including it therein, the quantity of land conveyed thereby would be about eighty-four acres; that the land in dispute contained

about nineteen acres, and if it were excluded, Huff would have but sixty-five acres.

Testimony for the plaintiffs, in rebuttal, tended to show that in 1847, the upper clearing extended down the mountain as far

as the line to which they claimed, and was enclosed on its southeast side by a fence which would be touched by the line in dispute, if run upon the location for which they contended. These allegations of the plaintiffs were contradicted by testimony in sur-rebuttal for the defendant. There was also testi-

Statement of Facts.

mony tending to show that John W. Huff and his sons had frequently cut timber on the land in dispute, which was unenclosed, without ever having had his right to do so challenged or disputed by any one. A part of this testimony was admitted under the following offer:

Defendant proposes to show that from the time the grantee, John W. Huff, purchased the farm from Elisha Atherton, and moved upon it, to the time of the bringing of this suit, he cut timber upon it and carried the same off; this to be followed by evidence that Elisha Atherton, the grantor, pointed out the land in controversy as having been conveyed by him to Huff, and stated that Huff would get timber enough off it to pay for the land; also, that Mr. Atherton, the grantor, cautioned one other witness who was cutting timber for him on lot No. 27, to be careful not to cut over on Mr. Huff's land, on that portion of it which is now in controversy; the purpose of this evidence being to establish the southeast boundary mentioned in Huff's deed, and to explain its ambiguity.

Plaintiffs' counsel objects: 1. For the reason that it is not yet shown that any part of the description contained in the deed is ambiguous; and until the court from inspection of the deed decides whether or not there is a latent ambiguity in the description, it is not competent to introduce evidence of the character proposed, for the purpose of clearing up the ambiguity or showing the construction the parties placed upon it. 2. Because no color of title has yet been shown by the defendant to the land in dispute.

By the court: It seems from the evidence in this case that on the thirtieth of December, 1847, Mr. Elisha Atherton held a title to the whole of lot known as lot No. 26, second division of Kingston township; it further appears that on the thirtieth of December, 1847, Elisha Atherton conveyed to John W. Huff a portion of this certified lot, in consideration of nine hundred dollars, said portion supposed to contain eighty acres of land, more or less. We are of the opinion, after listening to the testimony of the surveyors in this case, that there exists a latent ambiguity in this deed of conveyance which requires explanation, and for that purpose we consider the proposed evidence competent and pertinent to the issue. The objections, therefore, are overruled, the evidence admitted; exception.[15]

Statement of Facts.

The testimony being closed, the defendant's counsel, Mr. McGahren, in addressing the jury made use of the following language:

"One of the richest families of our valley is represented by the plaintiffs, one of whom, Thomas Atherton, lives as you know in a castle on River street."

Mr. Farnham. "I object to all the remarks the gentleman has just made with regard to the poverty or wealth of either of the parties."

Mr. McGahren, resuming: "One of the family, whose mother is a plaintiff in this case, resides here in this town. Possessed of vast estates on the one side; on the other, a man in poverty who has nothing except this little farm he bought fifty-three years ago. The parties on the one side have abundance. The parties on the other side, in humble circumstances, comparatively poor."

Mr. Farnham objects to these remarks, to which the court replies: "The court declines to interfere:* exception.[25]

---

*Upon a motion for a new trial, one of the reasons therein assigned being the above remarks of counsel to the jury, the court, WOODWARD, J., filed an opinion which, so far as it related to this subject, was as follows:

At the time these remarks were made I was engaged in preparing my charge to the jury, and my answers to the twenty-two points submitted by counsel. I did not observe them. My attention was first attracted by an altercation between counsel, as to the right of the stenographer to take down the remarks. The impression I received was that the stenographer was endeavoring to put down from memory what had been said, and this was being objected to. The argument was resumed, and nothing further was said on the subject. The counsel for the plaintiff, in his closing argument to the jury, explained to them fully that Mr. Thomas Atherton had no interest in this case, and was merely one of the counsel employed in it, and also pointed out with ability and force the duty of the jury to disregard all considerations growing out of the relative wealth or position of the parties. This was supplemented by us in our charge, with such cautions on the subject as seemed to be necessary. While appeals of this kind, if persisted in by counsel who address the jury, may sometimes justify a court in granting new trials, we are of opinion that in the present case the corrective was so promptly applied that no serious harm was done. The trial had already lasted seven days, and the circumstances and surroundings of the parties were probably as well understood by the jury before the objectionable language was uttered as after it. The motion for a new trial is refused.

Charge of Court below.

The court, WOODWARD, J., charged the jury in part as follows:

I am requested by the plaintiffs to charge you as follows:

1. The plaintiffs have shown, prima facie, a good title to the land in dispute, to overcome which the burden of proof rests upon the defendant; and unless he shows that the land in dispute is embraced within the lines of his deed from Elisha Atherton, the plaintiffs are entitled to recover.

Answer: We affirm the point.

2. Under his deed, the defendant's land extends from the northwest line of certified lot No. 26 southeastwardly; and the only question in contention is that of the location of his southeast line, the other lines of his land being undisputed. The defendant claims that the southeast line of the land in dispute is the southeast line of the land conveyed to him by the Atherton deed. The burden of proof, therefore, lies upon the defendant, to show that the line claimed by him is in conformity to the monuments and calls mentioned in the deed.

Answer: That point we affirm.

3. That, in the absence of proof of actual knowledge by the plaintiffs or their predecessors in title, of the cutting of timber by the defendant on the land in dispute, the same being unenclosed timber-land, such acts of cutting cannot operate to the prejudice of the plaintiffs' title to the land in dispute.

Answer: That point we decline to affirm, and say to you that the question of knowledge by the plaintiffs or their predecessors in title, of the cutting of timber by the defendant on the land in dispute, is a question of fact under all of the evidence in this case, to be by you ascertained.[12]

5. That, in the absence of proof of actual knowledge by the plaintiffs or their predecessors in title, of the cutting of timber or wood by the defendant upon the disputed land, which is unenclosed timber-land, such cutting does not, under the evidence, confer any title by possession, nor is it competent to affect or show the construction given by the parties to the defendant's deed.

Answer: As a whole we cannot affirm that point, and we negative it.[13]

9. That the call in the deed for "the fence touching the southeast part of the improvement," fixes the defendant's

southeast line, and this call must control the supposed or estimated quantity of land mentioned in the deed.

Answer: That point we cannot affirm, on the ground that it involves a question of fact for the jury.[19]

10. That the words, "touching the fence at the southeast part of the improvement," as used in the deed, must be so construed as to refer to the improvement upon the land therein conveyed, and cannot be construed to refer to any improvement on other land.

Answer: That point we decline to affirm.[1]

11. That the line claimed by defendant as his southeast boundary does not touch a fence "at the southeast part" of any improvement existing at the time of the conveyance by Atherton.

Answer: That point we decline to affirm.[2]

14. That the line claimed by defendant as his boundary on the southeast, being, by the undisputed testimony in the case, southeast of the land in dispute, which is and has been always a woodland and not an improvement, and not touching any fence at the southeast part of any improvement, does not conform to the calls or monuments mentioned in defendant's deed and cannot be taken as his southeast boundary.

Answer: That point we decline to affirm; because it involves, in our judgment, a question of fact for the jury.[4]

16. That no ambiguity has been shown in the application of the description in the deed to the facts on the ground.

Answer: That point we decline to affirm.[6]

17. That, under the law and all the evidence in the case, the plaintiffs are entitled to recover the land in dispute, and the verdict must therefore be for the plaintiffs.

Answer: That point we decline to affirm.[9]

Defendant's counsel ask us to charge you as follows:

5. If the jury believe the evidence offered on the part of the defendant, that for thirty years and upwards the defendant cut posts, mine ties, logging, cord wood and other timber, on the land in dispute, this is competent, taken in connection with the other evidence in the case tending to establish the true boundary of the defendant's land, and should receive due consideration by the jury.

Answer: I have taken the liberty to insert the word "tend-

Arguments.

ing " before the words " to establish," and with that amendment I affirm the point.[14]

Finally, gentlemen, we say to you that it sometimes happens, in trials of cases like this, that allusion is made by the counsel, in the ardor of debate, to the fact that one party is wealthy and the other poor, or that one is strong and the other weak, that one is influential and the other without influence; and in some cases, and under some circumstances, an enlargement upon such views of a case by counsel, would be ground for withdrawing a juror and continuing the case. After, however, such statements have been made and briefly dwelt upon, it is the duty of the court in submitting the case finally to the jury, to say to them that such considerations have nothing to do with their final disposition of the questions involved. Under the obligations of your oaths, you are to consider this case independently of any prejudice arising from such views.

If, gentlemen, you decide to find for the plaintiffs, your verdict shall be, we find for the plaintiffs for the land described in the writ. If your verdict shall be for the defendant, you will say in general terms you find for the defendant.

—The jury returned a verdict for the defendant, John W. Huff. A rule for a new trial having been discharged and judgment entered on the verdict, the plaintiffs took this appeal, assigning, inter alia, for error:

1, 2. The answers to plaintiffs' points.[1] [2]

4, 6. The answers to plaintiffs' points.[4] [6]

9, 12. The answers to plaintiffs' points.[9] [12]

13, 19. The answers to plaintiffs' points.[13] [19]

14. The answer to defendant's point.[14]

15. The admission of defendant's offer.[15]

25. The order of the court on plaintiffs' objection during the argument to the jury.[25]

*Mr. Alexander Farnham* and *Mr. Allan H. Dickson*, for the appellants:

1. The case in chief of the plaintiffs having exhibited an unquestionable title, the burden of proof was on the defendant, claiming under a deed from plaintiffs' ancestor, to show that the deed embraced the land in dispute: Miller v. Smith, 33 Pa. 386; Benedict v. Horner, 13 Wis. 286; and failing to do so,

Arguments.

he could not produce parol evidence of the location of his line, dehors the deed, without showing fraud or mistake: Collam v. Hocker, 1 R. 109; Beeson v. Hutchinson, 4 W. 442; Martin v. Berens, 67 Pa. 463; McWilliams v. Martin, 12 S. & R. 269; Kennedy v. Plankroad Co., 25 Pa. 224; Attorney General v. Clapham, 4 DeG., M. & G., 627; Penna. C. & R. Co. v. Betts, 1 W. N. 368; Seidel v. Shearer, 2 Woodw. 200. The monuments or boundaries shown to locate the lines must be those called for by the deed; others not mentioned in the deed cannot be shown: Wharton v. Garvin, 34 Pa. 340; Messer v. Rhodes, 3 Brewst. 181.

2. When the monuments called for by a deed cannot be found, or are not shown, the land must be located by other parts of the description; and when it can thus be located, no parol evidence of intent or other extrinsic evidence can be resorted to, to vary or control the description: Drew v. Swift, 46 N. Y. 204; Harvey v. Vandegrift, 89 Pa. 346; Wusthoff v. Dracourt, 3 W. 243; Waugh v. Waugh, 28 N. Y. 94; Clark v. Wethey, 19 Wood [?] 320; Bass v. Mitchell, 22 Tex. 285; Chichester v. Oxenden, 3 Taunt. 147. Such monuments as are found must be observed, even if all cannot be found: Talbot v. Copeland, 32 Me. 251. And it was the duty of the court to construe this deed, in the light of the facts shown as to the existence or absence of the monuments called for, and not to throw the deed and testimony together into the jury box: McCullough v. Wainright, 14 Pa. 171; Harvey v. Vandegrift, 89 Pa. 346; Meredith v. Picket, 9 Wheat. 574; Miller v. Fichthorn, 31 Pa. 258; Huffman v. McCrea, 56 Pa. 95.

3. In construing the deed, the court should have instructed the jury that the defendant's testimony did not show the land in dispute to be embraced within it; that the line claimed by defendant was inconsistent with the deed, properly construed, and therefore the plaintiffs were entitled to recover: Talbot v. Copeland, 32 Me. 251; Bagley v. Morrill, 46 Vt. 95; Conyngham v. Thornton, 28 Ill. App. 58. And the court should have held that "the improvement" referred to a clearing upon the land conveyed: Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 430; Edelman v. Yeakel, 27 Pa. 26; McCullough v. Wainright, 14 Pa. 171. While the description was manifestly inaccurate, as the bearing "N. 34½° E." was not "at right angles" to the

line between lots 25 and 26, there was no ambiguity in law, such as would let in parol evidence of intention : Bac. L. Max., Reg., 23 ; Greenl. Ev., §§ 298, 299 ; Bond v. Fay, 12 Allen 86 ; Anderson v. Baughman, 7 Mich. 69 (74 Am. Dec. 699) ; Lane v. Thompson, 43 N. H. 320 ; Abbott v. Abbott, 53 Me. 356 ; Den. v. Cutterly, 12 N. J. 309 ; Best v. Hammond, 55 Pa. 409 ; Whart. Ev., § 946 ; McDermot v. Insurance Co., 3 S. & R. 607 ; Wusthoff v. Dracourt, 3 W. 243.

4. When there is doubt as to one monument or boundary, and certainty as to another, that which is certain must prevail : Lincoln v. Wilder, 29 Me. 169 ; Doe v. Thompson, 5 Cow. 371 ; Drew v. Swift, 46 N. Y. 204 ; Bass v. Mitchell, 22 Tex. 285. Occasional acts of trespass, on the part of defendant, in cutting timber on this unenclosed woodland, even if continued for many years, cannot aid in establishing the line claimed by him as being his southeast line under his deed, especially as no knowledge of such acts was brought home to the grantor or his successors in title : Adams v. Rockwell, 16 Wend. 285 ; Adamson v. Potts, 4 Pa. 234 ; Edelman v. Yeakel, 27 Pa. 26 ; Burt v. Smith, 3 Phila. 363 ; Doe v. Thompson, 5 Cow. 371. To say that the remarks of the court in its charge could remedy the mischief done by the misconduct of counsel in addressing the jury, with which the court had " declined to interfere," is to say what every man knows to be incorrect.

*Mr. John McGahren* (with him *Mr. A. R. Brundage*), for the appellee :

1. We are unable to understand on what principle the burden of proof devolved upon the defendant. Possession is presumptive evidence of right, and the burden is on him who assails it to show his right to do so : Whart. Ev., § 1331 ; Cleveland etc. R. Co. v. Erie City, 27 Pa. 380. The proofs showed that there were two clearings on lot 26, the " improvement " thus being in two parts, one in the northwest and the other in the southeast of that tract. The plaintiffs contended that the phrase, " southeast part of the improvement " in the deed, applied to the clearing in the northwest part of lot 26, and the defendants contended that it had reference to the clearing in the southeast part of said tract. It is obvious, then, that the difficulty arose from a latent ambiguity, and in order to eluci-

date the meaning of the grant, its extent and limits, and to arrive at the intention and understanding of the parties, parol evidence was admissible to establish the southeast boundary of defendant's land: Bank v. Fordyce, 9 Pa. 275; Hoffman v. Danner, 14 Pa. 25; Barnhart v. Riddle, 29 Pa. 97; Chalfant v. Williams, 35 Pa. 215; Musselman v. Stoner, 31 Pa. 265; Brownfield v. Brownfield, 12 Pa. 136.

2. If the court would have been justified, in any event, in attempting to define the meaning of the deed, it would have had to give a construction in favor of the defendant. But as the facts relied on by the plaintiffs to locate the disputed line were strongly controverted, and there was a mass of conflicting testimony, the question of the location of the line was necessarily left to the jury. There being a latent ambiguity in the deed, arising from its reference to extrinsic objects, the testimony to show the situation and character of those objects at its date, and to show which of the two clearings was referred to, was for the jury, who were to determine which clearing was " the southeast part of the improvement:" Ayers v. Watson, 113 U. S. 594; Hunt v. McFarland, 38 Pa. 69; Hill v. Mason, 7 Jones (N. C.) 551; Hoffman v. Danner, 14 Pa. 25; McCullough v. Wainright, 14 Pa. 171; Clarke v. Adams, 83 Pa. 311; Whart. Ev., § 944; Bell v. Woodward, 46 N. H. 315; Brownfield v. Brownfield, 12 Pa. 144; Lycoming Ins. Co. v. Sailer, 67 Pa. 113; Foster v. Berg, 104 Pa. 324. A disputed line or boundary is always a question of fact for the jury: Brown v. Willey, 42 Pa. 205; Naglee v. Ingersoll, 7 Pa. 185; Nourse v. Lloyd, 1 Pa. 229.

3. It is a mistake to say that the words " at right angles " correct the bearing given, N. 34½° E. When two clauses in a deed are irreconcilably repugnant or inconsistent, the first will be enforced and the latter rejected: Havens v. Dale, 18 Cal. 357; Daniel v. Veal, 32 Ga. 589; Petty v. Boothe, 19 Ala. 638. And the testimony showing that the defendant exercised acts of ownership, by cutting timber on the land in dispute, was properly admitted, to show the construction given to the deed by the parties themselves, and to assist in ascertaining the true location of the line: Whart. Ev., § 941; Bell v. Woodward, 46 N. H. 315, Cutts v. King, 5 Me. 482; Storm v. Clark, 1 Metc. 378; Miner's App., 61 Pa. 283; Foster v. McGraw,

Opinion of the Court.

64 Pa. 469 ; Colder v. Weaver, 7 W. 468.   In view of the facts
that the grantor and his successors lived near by, within sight
of the land; that the timber-cutting was long continued and
notorious, and that knowledge of it was not denied by the
plaintiffs, the fact of such knowledge was a question for the
jury : Tanner v. Hughes, 53 Pa. 290 ; Whart. Ev., § 1226.

OPINION, MR. JUSTICE WILLIAMS :

The lines of certified lot No. 26 in Kingston township,
Luzerne county, are not in controversy in this case.   The lot
is forty-six rods wide and about two miles long, extending from
the Susquehanna river, in a westerly direction, to the top of
the mountain.   On the side of the mountain, near the middle
of the tract, is a piece of woodland, containing about eighteen
acres, which is the subject of dispute.

On the trial in the court below the plaintiffs showed title to
the whole of lot No. 26 in Elisha Atherton, traced that title
from him to themselves, and rested.   The burden of showing
that his possession was rightful then rested on the defendant,
and, if he failed to do this, the plaintiffs were entitled to re-
cover upon the strength of their own title.   The defendant, to
maintain the issue on his part, gave in evidence a deed made
by Elisha Atherton to John W. Huff in 1847, for a lot off the
western end of lot No. 26, " supposed to contain eighty acres of
land, be the same more or less," which he alleged covered the
land described in the writ.   If this was so, the defendant was
the holder of the Atherton title to the land in controversy, and
was entitled to a verdict in his favor.   The case turned, there-
fore, on the proper location of the division line separating what
Atherton sold to Huff from that which he retained for himself.
This line was described in the deed as follows : " Beginning at
a stone corner agreed on, on the line between lots Nos. 25 & 26;
thence north, thirty-four and one half degrees east, about forty-
six rods, at right angles, so as to touch the fence at the south-
east part of the improvement; thence to the line of lot No. 27
to a corner."   The other three lines were the lot lines of No.
26, and are not in controversy.   The plaintiffs contended that
the division line was between sixty and seventy rods farther
west than the defendant sought to locate it, and included no
part of the land in dispute; but no question was made over

the validity of the deed, or the defendant's title to the land covered by it.

If we turn to the deed, and examine the description of this line, we shall find that its location is fixed by reference to three monuments on the ground. These are the "stone corner agreed on, on the line between lots Nos. 25 & 26," which is the starting point; the corner on the line of lot No. 27, which is its northern terminus; and the "fence at the southeast part of the improvement," which is an intermediate point. There are also three circumstances given by which to fix the direction of this line, viz.: The course, north thirty-four and one half degrees east; the angle formed by it with the line on which it rests, a right angle; and its length, forty-six rods, which is the breadth of the tract. The two last are inconsistent with the first, and, taken in connection with the other lines, show that the course given is a mistake. We have, then, a straight line, crossing the tract at right angles with the side lines, and resting on three monuments described, as the division separating the land that Atherton conveyed to Huff from that which he retained. There was therefore no patent ambiguity on the face of the deed, but an evident mistake in the course given. There was no latent ambiguity, unless it was raised by evidence tending to show the existence in 1847 of two improvements, having each a fence at the southeast part, either of which might answer the description of the intermediate point given in the deed. The only real question raised was, where is the eastern line of the defendant's land? Upon this question the defendant had the burden of proof, and it was his duty to show to the satisfaction of the court and jury that his eastern line, as found on the ground, inclosed the land claimed by the plaintiffs. Failing to do this, he failed in his defence, and the plaintiffs are entitled to recover: Miller v. Smith, 33 Pa. 386.

Now, there was no doubt or uncertainty about the line described in the deed. The difficulty encountered in the case was not in understanding the language employed, but in finding the landmarks named as fixing the location of the line on the ground. The jury was to fix, if they could do so, the starting point, the stone corner agreed on, on the line between lots Nos. 25 and 26. If no marks of this corner capable of identification could be found, they were to look for the corner

opposite on the line of No. 27. If the search was equally unsuccessful, there remained the intermediate point, "the improvement." Where was this improvement? The grantor was describing a lot of land which he was conveying, and wherever he had occasion to refer to an object not upon it he describes it. He begins the division line in the boundary of No. 25. It ends on the line of No. 27. On its way it passes "an improvement," which is presumably upon the land conveyed. But the land conveyed lay northwest of this line, and an improvement upon it extending to or near the line would have the line on its southeast side. The intermediate point is described as "a fence at the southeast part of the improvement." The jury was therefore to look for evidences of an improvement on the land conveyed, with a fence standing, in 1847, on its southeast side, or at its southeast part. If the improvement had been on the other side of the line it would have been its northwest part that would have been touched; and if the line had been so run as to touch the cleared land on that side, it would have been the farm of Mr. Atherton, which had been cleared and cultivated for many years, and had his dwelling-house and farm buildings upon it, that it would have skirted. If the place of a fence at the southeast part of the improvement can be fixed, that will fix one of the three points called for, and locate the line. If neither of the three can now be fixed, the defence fails for the reason already given.

The acts of Huff in cutting timber on the land at times during the forty-three years, have no significancy, unless it appears that such acts were known to Atherton. The learned judge was asked by the plaintiffs' third point to so instruct the jury, and made answer, "That point we decline to affirm;" adding, that whether Atherton had knowledge of the acts of Huff was, under all the evidence, for the jury to determine. This part of the answer was undoubtedly right. Atherton's knowledge was to be settled by the jury as a question of fact, but the plaintiffs asked the court to say as a matter of law that, unless the jury should find the fact of knowledge, the acts of Huff could not affect Atherton. This should have been affirmed. The same question was presented in another form by the plaintiffs' fifth point, which asked the court to say that, in the absence of proof of knowledge by Atherton, the mere fact of

the cutting of timber, as alleged, on unenclosed woodland, could neither give title under the statute of limitations, nor serve to locate the division line by the acts of the parties. The learned judge replied, "As a whole, we cannot affirm that point, and we negative it." But it is well settled that occasional entries on unenclosed woodland will not give title: Burke v. Hammond, 76 Pa. 172. On the other hand, an adverse possession such as will ripen into a title under the statute, must be open, adverse, continuous. Such has been the rule since Johnston v. Irwin, 3 S. & R. 291, and if we except Waggoner v. Hastings, 5 Pa. 300, and a few cases following it, the rule has been held with steadiness and without relaxation. It is equally clear that a man cannot give a construction to a deed, or make a consentable line, by not dissenting from acts of which he had no knowledge. He must know of the act which is adverse to his title before any duty arises in regard to it.

What has now been said is applicable to the fourteenth and fifteenth assignments of error. The question before the jury was, where is the line separating the land sold to Huff from the remainder of Atherton's farm? Any acts or declarations of Atherton, tending to answer this question or to throw light upon it, are competent. But acts of Huff, not brought to his attention, are competent for no purpose whatever, so far as this question is concerned.

The subject brought to our attention by the twenty-fifth assignment is one of some importance; and, while we are unwilling except in a clear case of abuse of discretion, to interfere with the control of the argument by the court below, we feel it our duty to call attention to the test which should be applied to the remarks of counsel in such cases. The object of a trial at law is to do exact justice between the parties. Allusions to the wealth or poverty of the parties, to the strength of municipal or private corporations, and the comparative helplessness of an individual citizen, are proper when they are made in a spirit of fairness, and for the purpose of stimulating the jury to a careful and conscientious discharge of their duty in the particular case; but when such allusions are made, and the changes are rung upon them, for the evident purpose of inflaming the passions and prejudices of jurors, and leading them to disregard their duty, to overlook the actual facts, or set aside a clear le-

'Syllabus.

gal right, they are improper and reprehensible.   The advocate who makes them forgets his official oath, and the judge who permits them neglects a clear official duty.   We do not undertake to characterize what is brought to our attention by this assignment.   We have nothing of the connection in which the words objected to were spoken.   The court may have been right (and we assume it was) in declining to interfere in this instance, but the plaintiffs had a right to have the stenographer enter upon his notes any objectionable remarks made by counsel in the argument ; and if the evident purpose and natural effect of what was said was to excite prejudice, and so obscure the real questions involved, it was the duty of the court to interfere and direct the discussion into legitimate channels.

We have not taken up the numerous assignments of error in their order, but we have endeavored to indicate the lines within which the trial of this case should be conducted, and the errors into which the theory upon which it was tried led the learned judge.

> The judgment is reversed, and a venire facias de novo awarded.