Argued May 6, affirmed September 8, petition for rehearing
denied November 2, 1965

# AMERICAN RECIPROCAL INSURERS *v.*
## BESSONETTE ET AL
405 P. 2d 529

*William G. Wheatley,* Eugene, argued the cause for appellants. On the briefs were Jaqua & Wheatley, Eugene.

*Richard E. Miller,* Eugene, argued the cause for respondent. With him on the brief were Robert E. Moulton and Robert J. Johnston, Eugene.

502

Before McALLISTER, Chief Justice,* and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

The defendants were respondents in an earlier appeal in which this court overruled a legal defense which had produced their trial court victory. *American Insurers v. Bessonette,* 235 Or 507, 384 P2d 223, 385 P2d 759 (1963). Deprived thus of their judgment, the defendants seek now a second opportunity to litigate the facts, insisting that their defense at the earlier trial was different than it would have been if they had not relied upon an early Oregon case[1] which, they say, should have been prospectively overruled, if overruled at all.[2]

The dispute concerned liability for damages to a warehouse and goods stored therein which resulted when a water pipe burst and flooded the premises. As insurers of the warehouse owner and the lessee, plaintiff brought suit to recover the losses. Defendants, as general contractors, had constructed the warehouse. Plaintiff alleged that the defendants' negligent failure to place proper packing around the water pipe where it intersected a bearing wall was responsible for the rupture that occurred when the wall settled. The defendants waived jury trial, but controverted the issues of negligence and causation, and, in general, defended against the merits of the claim.

---

* McAllister, C. J., did not participate in the decision in this case.

[1] Bamford v. Van Emon Elevator Co., 79 Or 395, 155 P 373 (1916).

[2] While we did not expressly overrule *Bamford v. Van Emon Elevator Co.,* our opinion in the first appeal left no doubt that the *Bamford* case could no longer be relied upon.

The decision on the issues of negligence and causation was in favor of the plaintiff, but the trial court awarded damages only for the losses sustained by the warehouse owner. With respect to the considerably greater damage suffered by the lessee, however, the trial court considered itself bound by language in the *Bamford* decision which could be read as shielding building contractors from liability for negligent workmanship which caused injury to persons with whom the contractor had no contractual privity.

Following the trial decision, but before an appeal could be brought, this court decided *Strandholm v. General Const. Co.*, 235 Or 145, 382 P2d 843 (1963), which repudiated any residual notions that Oregon contractors could evade liability for negligent conduct by contending that they were not in privity with their tort victims. On the authority of *Strandholm*, this court summarily reversed the trial court in the case at bar insofar as the judgment denied recovery for losses suffered by the lessee. We directed that the trial court enter judgment in accordance with the *Strandholm* rule.

On the basis of this directive, the trial court modified its judgment so that the defendants became liable for damages suffered by the lessee as well as those suffered by the warehouse owner.

The defendants now object to that procedure and contend that they are entitled to a trial *de novo* on the issues of negligence and causation. They assert that their trial strategy in the first case had been geared to the belief that the *Bamford* language was, and would continue to be, controlling. For example, the defendants say they waived trial by jury because they deemed their potential negligence liability, under the *Bamford* case, to be so inconsequential as to make

a jury trial inexpedient. (While the defendants denied that they were liable to the owners of the building, the owners proved a small amount of damage, and the plaintiff insurer established factually that the ruptured pipe resulted from the defendants' negligence.)

There was no cross appeal from the judgment for the amount of the loss suffered by the owners of the building. The adverse findings of fact made by the trial court were not, therefore, challenged. The defendants may have believed that a cross appeal from a judgment in favor of the owners of the building was not warranted by the dollar amount of the judgment. In any event, the defendants had been exonerated of liability for the major loss, despite their negligence, and they were content with the judgment against them for the lesser sum.

The plaintiffs, however, appealed that judgment, and reversal by this court placed the defendants in a position in which the law as well as the facts were against them.

■■ Where there has been a jury trial, and there is a possibility that the wrong law may have been used by the triers in finding the facts, a change in the law upon appeal requires a new trial. But in the present case the trial judge had no occasion to consider the question of privity when he was deciding the facts. It thus made no difference, with reference to the trial, whether we overruled the language in the *Bamford* case before or after the factual questions were decided. Accordingly, there would be no useful purpose in sending the present case back for another trial.

With reference to the waiver of jury trial, we are aware of no reason for granting a second opportunity to try a strictly factual question merely because in

a former trial a jury was waived for reasons of economy or strategy, or both.

Since the absence of contractual privity will not shield contractors from liability for negligence, the defendants could have prevailed ultimately only by establishing a defense against the allegations of negligence. The record in the trial below reveals that the defendants tried to prove that they were not negligent. They also tried to prove that their negligence, if any, did not cause the losses complained of. The trial court heard all the testimony and examined all the exhibits and decided that the defendants were negligent and that their negligence did cause the harm. The issues of negligence and causation, therefore, are *res judicata*. *Jarvy v. Mowrey*, 235 Or 579, 583, 385 P2d 336 (1963).

In addition to the present assertion by the defendants that if they had known that upon appeal they might be held liable to the lessees they would have tried the case differently, there are also two assignments of error which belatedly challenge rulings made during the trial.

One assignment challenges certain exhibits received over objection. During the trial the court permitted the plaintiffs to introduce pieces of water pipe, the bursting of which was alleged to have caused the losses complained of by the plaintiffs. The defendants objected to the exhibits on the ground that their custody between the time of the damage and the time of the trial had not been fully accounted for. The trial court overruled the objection.

The ruling was discretionary. The exactness of a proponent's accounting for the custody of exhibits must, necessarily, rest in the sound discretion of the

trial judge. If the exhibits are of a questionable type, or if the environment from whence they come suggests reasons that would cause the court to have more than a mere captious doubt about the authenticity of the exhibits, or about their identity, or about changes in their condition, then the trial court may very well require a proponent to lay a substantial foundation for the receipt of the evidence. See *Keller v. Coca Cola Bottling Co.,* 214 Or 654, 662, 330 P2d 346 (1958). In the case at bar, however, there is no reason to infer that anyone tampered with the pipe, nor is there any reason seriously to doubt the authenticity of the exhibits. The trial court might have required the plaintiffs to describe in greater detail the chain of custody of the exhibits, but there was no error in receiving them under the circumstances revealed in this case.

 Finally, it is argued that there was no duty owed the lessees by the general contractors to construct the building in such a manner that its walls would not settle and break the water pipes which other contractors installed before the walls were poured. A builder owes the other party to his contract a contractual duty to construct the building in a good, workmanlike manner. He also owes those who foreseeably will use the building a duty not to build into the building defects that will cause harm to the users. The probability of harm resulting from pouring concrete walls on water pipe without protecting the pipe is not so remote that we can rule out, as a matter of law, the duty to guard against such harm. See *American Insurers v. Bessonette,* 235 Or, supra at 510.

Affirmed.