## Kuchinic, Appellant, v. McCrory.

Argued March 17, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Milton D. Rosenberg,* with him *John M. Feeney,* and *Bloom, Bloom, Rosenberg & Bloom,* and *McArdle, Harrington, Feeney & McLaughlin,* for appellants.

*William C. Walker,* with him *Dickie, McCamey & Chilcote,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, September 27, 1966:

This appeal involves three consolidated cases arising out of an airplane accident in the area of Brunswick, Georgia, on December 8, 1957, in which the pilot

and three passengers were killed. At the time of the accident the plane was en route to Pittsburgh from Miami, Florida, where the four occupants, all personal friends and Pennsylvania residents, had gone to attend a football game. Actions in trespass were instituted in the Court of Common Pleas of Allegheny County on behalf of the deceased passengers against the estate of the pilot. The jury returned a verdict in favor of the defendant-appellee; the trial court denied appellants' motions for a new trial and this appeal followed.

In *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964), this Court abandoned the inflexible rule that the law of the place of the tort, the lex loci delicti, was invariably controlling.[1] Since the present cases were tried prior to our decision in *Griffith,* both the parties and the lower court assumed that the law of Georgia, the lex loci delicti, was determinative. Inasmuch as Georgia law requires a guest to prove gross negligence before recovering damages from his host,[2] appellants alleged and sought to establish such negligence. Their theory was that it constituted gross negligence for the defendant-pilot, who lacked instrument training, to fly into the adverse weather conditions which prevailed over the area of the crash. They alleged, as a result of the poor visibility, the pilot manuevered the plane into such an attitude that the wing became overstressed and broke off, causing the plane

---

[1] A more flexible approach to conflict of laws has been advocated for some time by leading commentators, e.g., Currie, The Disinterested Third State, 28 Law & Contemp. Prob. 754 (1963) ; Traynor, Is This Conflict Really Necessary?, 37 Tex. L. Rev. 657 (1959) ; Weintraub, A Method for Solving Conflict Problems—Torts, 48 Cornell L.Q. 215 (1963). *Griffith,* itself has been widely discussed, e.g., Comments, Griffith v. United Air Lines, Inc., A Justification for Uncertainty, 10 Vill. L. Rev. 100 (1964) ; 69 Dick. L. Rev. 81 (1964) ; 1965 Duke L.J. 623; 50 Iowa L. Rev. 886 (1965).

[2] Ga. Code Ann. §§11-107, 105-203; see *Citizens & So. Nat'l Bank v. Huguley,* 100 Ga. App. 75, 110 S.E. 2d 63 (1959).

to crash. In its verdict, the jury specifically found that the appellee was not guilty of gross negligence.

Appellants now contend that in light of the intervening *Griffith* decision the law of Pennsylvania, not Georgia, should have determined the legal effect of the host-guest relationship. Since Pennsylvania does not have a guest statute, appellants argue that recovery in these cases could have been sustained upon a finding of simple negligence and that, therefore, the trial judge erred in instructing the jury that they must find gross negligence in order to return a verdict in favor of the appellants.

We agree with appellants that the policy and interest analysis spelled out in *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964) requires that Pennsylvania law be applied to these facts. See also *McSwain v. McSwain,* 420 Pa. 86, 215 A. 2d 677 (1966); *Elston v. Industrial Lift Truck Co.,* 420 Pa. 97, 216 A. 2d 318 (1966). Factually this case is almost identical with the problem presented in *Babcock v. Jackson,* 12 N.Y. 2d 473, 240 N.Y.S. 2d 743, 191 N.E. 2d 279 (1963), where the New York Court of Appeals, disregarding the strict application of the lex loci delicti, held the guest statute of Ontario, inapplicable to an Ontario accident involving New York residents. The only distinction between *Babcock* and the present case is that the statute involved in *Babcock* denied a guest recovery under all circumstances, whereas the Georgia statute permits recovery in the event of gross negligence. However, we regard this as a distinction without a difference.[3]

---

[3] See *Babcock v. Jackson,* 240 N.Y.S. 2d 743, 752 n.14, 191 N.E. 2d 279, 285 n.14 (1963). In *Bednarowicz v. Vetrone,* 400 Pa. 385, 162 A. 2d 687 (1960), on facts substantially similar to *Babcock,* this Court applied the law of Ontario. However, as a pre-*Griffith* decision this result has no bearing on the resolution of the instant case.

Indeed when properly analyzed the present cases are a prime example of what has been characterized as a "false conflict", for under no stretch of the imagination can Georgia be viewed as a concerned jurisdiction.[4] In passing its statute, Georgia undoubtedly intended either to protect insurance companies from collusive suits or to prevent ungrateful guests from suing their hosts; it most assuredly did not mean to encourage the exercise of less than due care by those who use its highways or airways. Georgia's only contact with the present case, as the situs of the accident, is wholly fortuitous, whereas Pennsylvania, as the place where the host-guest relationship was established, where it was intended to terminate, and as the domicile of all four of the aircraft's occupants, is the state with the most significant interest in defining the legal consequences attaching to the relationship here involved. See *Griffith v. United Air Lines*, supra.

The appellee further contends that appellants are precluded from challenging the court's charge because they agreed to the application of Georgia law below. This argument does not question the retroactive application of *Griffith*, for appellee concedes that if appellants had excepted to the trial judge's utilization of the Georgia standard in his charge and if the *Griffith* analysis would lead to an application of Pennsylvania law, appellants would now be entitled to a new trial. The sole basis for appellee's argument is that it would

---

[4] As the courts are beginning to recognize, there are many factual situations where, although two jurisdictions have nominal contacts with the transaction, only one jurisdiction is truly concerned with the result. See, e.g., *McSwain v. McSwain*, 420 Pa. 86, 215 A. 2d 677 (1966) ; *Griffith v. United Air Lines*, 416 Pa. 1, 203 A. 2d 796 (1964) ; *Grant v. McAuliffe*, 41 Cal. 2d 859, 264 P. 2d 944 (1953) ; *Schmidt v. Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N.W. 2d 365 (1957) ; *Babcock v. Jackson*, 12 N.Y. 2d 473, 240 N.Y.S. 2d 743, 191 N.E. 2d 279 (1963) ; *Kilberg v. Northeast Airlines*, 9 N.Y. 2d 34, 211 N.Y.S. 2d 133, 172 N.E. 2d 526 (1961).

give appellants the windfall of an extra day in court and impose on him undue expense and delay in relitigating these cases.

While there are no cases in Pennsylvania dealing with the effect of a change in decisional law pending appeal,[5] there is authority in a closely related field. Unless vested rights are affected, a court's interpretation of a statute is considered to have been the law from its enactment date, despite contrary intervening holdings. *Buradus v. General Cement Prods. Co.,* 159 Pa. Superior Ct. 501, 48 A. 2d 883 (1946), aff'd 356 Pa. 349, 52 A. 2d 205 (1947). In such circumstances, the latest interpretation is applicable to a case whose appeal has not yet been decided.[6]

Moreover, there are occasions when a party is given the benefit of a change in the law in order to prevent an injustice, especially when, as here, the other party could not have changed his position in reliance on the initial decision. Thus in *Reamer's Estate,* 331 Pa. 117, 200 Atl. 35 (1938), we were willing to correct a decision in a previous appeal of the same case which had been made palpably erroneous by an intervening decision despite the law of the case doctrine.[7] Recently in

---

[5] There is a general accord among other jurisdictions which have considered this precise point, that an appellate court will apply a change in law to all pending cases. See *Yates v. St. Johns Beach Dev. Co.,* 122 Fla. 141, 165 So. 384 (1935) ; *Lober v. Kansas City,* 74 S.W. 2d 815 (Mo. 1934) ; *Shaw v. Village of Hempstead,* 20 App. Div. 2d 663, 246 N.Y.S. 2d 557 (1964) ; *American Reciprocal Insurers v. Bessonette,* 241 Ore. 500, 405 P. 2d 529 (1965) ; *Chase v. American Cartage Co.,* 176 Wis. 235, 186 N.W. 598 (1922) ; Annot. 111 A.L.R. 1313, 1342 (1937).

[6] See *Ziffrin, Inc. v. United States,* 318 U.S. 73, 63 S. Ct. 465 (1943) ; *Modern Homes Constr. Co. v. Mack,* 219 Ga. 715, 135 S.E. 2d 386 (1964) ; *Yorkdale Corp. v. Powell,* 237 Md. 121, 205 A. 2d 269 (1964) ; *Kometscher v. Wade,* 177 Neb. 299, 128 N.W. 2d 781 (1964) ; Annot. 111 A.L.R. 1313 (1937).

[7] Under the law of the case doctrine, which only applies to appellate courts, a court will refuse to reconsider its own rulings

*Brubaker v. Reading Eagle Co.,* 422 Pa. 63, 221 A. 2d 190 (1966), we ordered a new trial in order to permit the plaintiff to bring his allegations within the actual malice requirement of *New York Times Co. v. Sullivan,* 376 U. S. 254, 84 S. Ct. 710 (1964). Although in *Brubaker,* the plaintiff was deprived of his original verdict by the change in law, and it thus is the converse of the present problem, it is illustrative of our goal of assuring each litigant a fair adjudication on the merits.

The effective administration of justice ordinarily requires that a litigant who fails to raise at trial an available objection waives it on appeal. This Court is reluctant to permit a party to allege error in the jury charge for the first time on appeal, because it would be manifestly unfair to permit a party to take his chances on a verdict, and then complain if he loses, when an earlier objection would have afforded the trial court an opportunity to correct the error. *Lobalzo v. Varoli,* 422 Pa. 5, 220 A. 2d 634 (1966); *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A. 2d 437 (1960). The present case, of course, is one where an earlier objection would have been to no avail, because the charge correctly stated prevailing law. Furthermore, the rule espoused by appellee would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law. Since, by hypothesis, the trial court would have to overrule any objection based on his failure to adopt one of these theories, on appeal, the winning party below would be in the same position as the instant appellee. Indeed this requirement would tend to delay justice, for the court

of law on a subsequent appeal of the same case. *Brown Estate,* 408 Pa. 214, 183 A. 2d 307 (1962). This doctrine should not be confused with either res judicata or stare decisis. See *Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 100 A. 2d 595 (1953).

below would still have to consider and rule on each theory.[8] Therefore, we are unwilling to conclude that the appellants' failure to interject the rationale of *Griffith* into the trial constitutes a waiver[9] and precludes them from now seeking the benefit of that decision.

We deem one further comment appropriate to the disposition of this case. During his closing argument appellee's counsel, over objections, made frequent reference to the relative affluence of the parties. Because there must be a new trial in any event, we need not decide whether these remarks were so prejudicial that a new trial should be granted on this ground alone or whether, as the trial judge concluded, their effect was sufficiently attenuated by the rest of the argument as to have no effect on the verdict. Suffice it to say that we deem the remarks highly inappropriate[10] and are confident that they shall not be repeated at retrial.

Judgments reversed and new trial ordered.

---

CONCURRING OPINION BY MR. JUSTICE COHEN:

I concur in the result for only one reason—I believe that plaintiffs should be permitted to present their case for trial pursuant to the conflict of laws rule of *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964), whereby the negligence law of Pennsylvania must be applied to this case.

---

[8] But cf. *Curtis Publishing Co. v. Butts*, 351 F. 2d 702, 709-13 (5th Cir. 1965), cert. granted, 35 U.S.L. Week 3110 (U.S. Oct. 1966) (No. 814, 1965 Term; renumbered No. 37, 1966 Term), criticized in 114 U. Pa. L. Rev. 451 (1966).

[9] Since appellants had no knowledge of their right to have this case tried under Pennsylvania law, they can not be deemed to have waived that right. *Linda Coal & Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 100, 204 A. 2d 451, 453 (1964).

[10] *McCune v. Leamer*, 383 Pa. 434, 119 A. 2d 89 (1956); *Narciso v. Mauch Chunk Township*, 369 Pa. 549, 87 A. 2d 233 (1952); *Henry v. Huff*, 143 Pa. 548 (1891).

My concurrence in no way indicates my approval of the qualifications of plaintiffs' expert witness who, as a safety officer in the Air National Guard, testified that the accident was caused by pilot error. This so-called expert had previously investigated only two accidents, in neither of which was pilot error the official cause of accident, and based his opinions solely on the depositions and testimony of prior witnesses, because he never viewed the crash scene first-hand.

Nor does my concurrence indicate acceptance of the expert opinions expressed by plaintiffs' meteorologist. I believe that opinion evidence of the weather conditions at the time of the crash is inadmissible as a violation of the best evidence rule, inasmuch as plaintiffs did not establish that there were no witnesses in the immediate vicinity of the wreckage who could testify from personal knowledge as to the weather conditions. Furthermore, in view of the testimony of the only eyewitness produced by any of the parties that the weather was not cloudy or rainy at the accident locale, little weight may be given to the meteorologist's testimony, because expert opinion evidence cannot prevail against direct factual credible evidence. *Kadilak Will*, 405 Pa. 238, 174 A. 2d 870 (1961).

Finally, I disagree with the majority's implied acceptance of the tactics of plaintiffs' counsel in questioning the propriety of certain remarks of the defense attorney. Hardly a more improper procedure by which to object to the closing remarks of opposing counsel can be cited than that demonstrated by counsel in this case, who interrupted the closing statement of defense counsel five times and not once requested that a juror be withdrawn, and who later, having a stenographic transcript of the closing arguments, apparently culled those pages seeking bases for a new trial, after his opportunity to object had long passed. *Commonwealth v. Gomino*, 200 Pa. Superior Ct. 160, 175, 188 A. 2d

784, 791 (1963). The practice is clear, and both this Court and the Superior Court have declared on numerous occasions that the party objecting to the remarks of counsel should request the withdrawal of a juror and that the trial judge place upon the record the remarks as the court understood them, or, failing this, counsel may place them on record by affidavit. *Commonwealth v. Wilcox,* 112 Pa. Superior Ct. 240, 170 Atl. 455 (1934), aff'd per curiam 316 Pa. 129, 173 Atl. 653 (1934); *Commonwealth v. Kerr,* 171 Pa. Superior Ct. 131, 89 A. 2d 889 (1952). In either event, the objection and request for withdrawal of a juror must be made immediately after the objectionable remark has been uttered, and this rule is in no way changed or modified because the court stenographer has been directed to transcribe the remarks of counsel. That transcription is not part of the record. The only remarks that become part of the trial record are those which are made part thereof by the court or by affidavit of counsel, after the appropriate objection and request have been made.