**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**


| | | |
|---|---|---|
| BETTY BELL, AN ADULT INDIVIDUAL, AND PROPEL SCHOOLS, D/B/A PROPEL CHARTER SCHOOL - HOMESTEAD, PROPEL CHARTER SCHOOL - SUNRISE, D/B/A PROPEL BRADDOCK HILLS, PROPEL CHARTER SCHOOL - PITCAIRN, AND PROPEL CHARTER SCHOOL - HAZELWOOD, | : : : : : : : : | No. 23 WAP 2024<br><br>Appeal from the Order of the Commonwealth Court entered January 31, 2024, at No. 1259 CD 2019, Affirming the Order of the Allegheny County Court of Common Pleas at No. GD 18-12950 entered August 23, 2021. |
| Appellant | : | |
| | : | |
| v. | : | ARGUED: April 10, 2025 |
| | : | |
| WILKINSBURG SCHOOL DISTRICT, | : | |
| Appellee | | |


**OPINION**


**JUSTICE DOUGHERTY**                    **DECIDED: JANUARY 21, 2026**

In this appeal we are tasked with determining whether Section 1726-A(a) of the Charter School Law ("CSL"), 24 P.S. §17-1726-A(a),[1] permits a school district to furnish different modes of free transportation to students enrolled in public charter schools than to students attending traditional public schools. Consistent with the unambiguous text of the statute, we hold it does. We therefore affirm.

The parties before us are familiar ones. *See Bell v. Wilkinsburg Sch. Dist.*, 283 A.3d 245 (Pa. 2022) ("*Bell II*"). Appellee, the Wilkinsburg School District (the "District"), is a public school district located in Wilkinsburg Borough, Allegheny County. Appellants are Propel Charter Schools, a non-profit corporation that operates public charter schools in several municipalities within ten miles of the District's boundaries — Pitcairn,

---

[1] We reproduce this statute in full *infra*.

Homestead, Braddock Hills, and Hazelwood — and Betty Bell, a resident of the District living with her two grandchildren, one of whom attends a Propel charter school.[2] We previously recounted the relevant history underlying the parties' litigation in this case as follows:

> Prior to the 2017-2018 school year, the District contracted with an independent bus company to provide transportation for all students residing in the District who attended its schools as well as for those students who attended one of Propel's charter schools located within ten miles of the District's boundaries. Thus, students who attended these charter schools were transported to and from those schools on buses the District provided, pursuant to its bus contract. However, before the 2018-2019 school year, as part of ongoing efforts to safeguard its fiscal stability, the District engaged the services of a consultant from the Pennsylvania Association of School Business Officials to review its overall transportation program. Based on the consultant's review, the District determined that, if it discontinued providing school bus transportation for charter school students, and, instead, furnished those students with free passes to use public bus transportation provided by the Allegheny County Port Authority ("PAT"), its overall annual transportation costs would be reduced. This was because the District would be fully reimbursed by the Department for the cost of purchasing of bus passes from PAT; whereas, if it continued to provide bus transportation itself for the Propel students, the state subsidy for such costs was significantly more limited; as a result, the District would incur $136,836 in unreimbursed transportation expenses each fiscal year.
>
> Consequently, the District decided that it would no longer provide Propel students with school bus transportation[.] . . . As a result of the District's decision, Propel retained the services of a private bus company to provide transportation for all of its students in kindergarten through grade five; however, Propel did not provide such transportation for its sixth through twelfth grade students, who instead used the PAT bus passes provided by the District, or other means of transportation.
>
> . . . On October 12, 2018, Bell and Propel jointly filed a lawsuit against the District, seeking both declarative and injunctive relief. The lawsuit sought a declaratory judgment that the District's furnishing of PAT bus passes to Propel's students did not constitute the provision of "free transportation" as Section 17-1726-A(a) of the [CLS] required, and, also, sought an injunction to prospectively prohibit the District from issuing such passes to Propel's

---

[2] As we did in *Bell II*, "for ease of discussion, we will refer to Bell and Propel Charter Schools, collectively, as Propel." 283 A.3d at 248 n.3.

students. Following a non-jury trial, the trial court ruled in the District's favor and dismissed Propel's complaint.

The trial court found that the District did not violate either the CSL or the Public School Code. The court reasoned that, although Section 17-1726-A(a) of the CSL requires students to be provided "free transportation," Section 13-1362 of the Public School Code expressly permits such transportation to be furnished by "common carriers" such as PAT.[3] The trial court concluded that the "under the same conditions" language in Section 17-1726-A(a) was a requirement that the route be non-hazardous, but not that charter school students and school district students be transported in the same type of carrier. Trial Court Opinion, 10/22/19, at 2. Given that the trial court could find no basis in either the CSL or the Public School Code to mandate that identical means of transportation be provided to school district and charter school students, it refused to "impose such a requirement by judicial fiat." *Id.*

Propel appealed to the Commonwealth Court, arguing that the trial court committed legal error by failing to conclude that: (1) Section 1726-A(a) of the CSL required the District to provide the charter school students with the same form of transportation that the District provides to students attending its own schools; (2) the District's use of PAT buses to transport Propel students violated Section 23.2 and Section 23.4 of the Board's regulations governing pupil transportation; and (3) the District's use of PAT buses to

---

[3] Section 13-1362 provides:

The free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1½) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. All private motor vehicles employed in transporting pupils for hire shall be adequately covered by public liability insurance in such amount as the board of school directors shall require.

24 P.S. §13-1362.

transport Propel students violated Section 13-1362 of the School Code because this resulted in students having to walk long distances over unsafe routes. . . .

The Commonwealth Court reversed in a unanimous, published *en banc* opinion. *Bell v. Wilkinsburg Sch. Dist.*, 252 A.3d 708 (Pa. Cmwlth. 2021) [("*Bell I*")]. The court focused its analysis on the question of whether the District complied with Section 23.2 of the Board's regulations, as it viewed this to be "a threshold issue." *Id.* at 711. . . . [I]t concluded that the trial court erred by failing to find that the District violated Section 23.2 by not seeking approval from the Department before changing its transportation plan for the Propel students.

*Bell II*, 283 A.3d at 247-250 (emphasis and footnotes omitted).

Upon further review of that discrete determination, this Court reversed. *See id.* at 257. "[L]ike the trial court, we adopt[ed] the District's interpretation of Section 23.2, and conclude[d] that it was not obligated thereunder to submit its transportation plan for Propel's students to the Department for approval prior to implementing it." *Id.* We remanded for consideration of the remaining two issues raised by Propel: whether the plan violates Section 1726-A(a) of the CSL, and whether the plan violates Section 1362 of the Public School Code.

On remand, in an unpublished memorandum, a divided *en banc* panel of the Commonwealth Court affirmed the trial court's order. *See Bell v. Wilkinsburg Sch. Dist.*, 313 A.3d 486, 2024 WL 358515 (Pa. Cmwlth. 2024) (*en banc*) ("*Bell III*"). The lower court determined the trial court correctly construed the language of both Section 1726-A(a) of the CSL and Section 1362 of the Public School Code.[4]

---

[4] In rejecting Propel's claim under Section 1362, the Commonwealth Court pointed to this Court's prior observation that "no evidence at trial showed that any grade school student had to walk more than one and one-half miles to reach a public bus stop or that the routes to do so were unsafe." *Bell III*, 2024 WL 358515, at *5, *citing Bell II*, 283 A.3d at 249 n.7. The lower court agreed with the "District that its transportation policy does not violate Section 1362" since it "requires less than one and one-half miles of walking distance, [provides] stations or shelters where needed, and [there is] no [Department of Transportation ("DOT")] certification of hazardous conditions." *Id.* Propel did not seek allowance of appeal as to this holding, so we do not discuss it further.

Section 1726-A(a) of the CSL provides:

Students who attend a charter school located in their school district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district.  Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions.

24 P.S. §17-1726-A(a).  The Commonwealth Court explained the first sentence of this statute "requires only free transportation for all students."  *Bell III*, 2024 WL 358515, at *6. And since Section 1362 of the Public School Code provides that "free transportation" may be "furnished by using either school conveyances, private conveyances, or electric railways, **or other common carriers**," 24 P.S. §13-1362 (emphasis added), the court determined it was within the District's discretion to "provide any of the four modes of transportation listed in Section 1362[.]"  *Bell III*, 2024 WL 358515, at *6.

Turning to the second sentence of Section 1726-A(a), the Commonwealth Court found it "does not require identical transportation for school district students and charter school students."  *Id.*  In reaching this conclusion, the court rejected Propel's argument the phrase "under the same conditions" invokes a general requirement that charter students must receive the same form of "free transportation" that the school district affords its own students.  That argument was predicated on this Court's decision in *Mosaica*

*Academy Charter Sch. v. Dep't of Educ.*, 813 A.2d 813 (Pa. 2002), where we interpreted a previous version of Section 1726-A(a) that included language requiring school districts to afford transportation to students attending charter schools "on the same terms and conditions as transportation is provided to students attending the schools of the same district[,]" to be consistent with Section 1361 of the Public School Code.[5] *Former* 24 P.S. §17-1726-A(a). The Commonwealth Court reasoned that "[b]ecause charter schools are public schools, not nonpublic schools, Section 1361 does not apply here." *Bell III*, 2024 WL 358515, at *6. As for Propel's reliance on this Court's interpretation of the prior version of Section 1726-A(a) in *Mosaica*, the lower court agreed with the District that legislative "amendments have removed that requirement in favor of the current more flexible approach." *Id.* In the court's view, Propel was asking it "to rewrite Section 1726-A, using the current 'under the same conditions' language, to restore what the legislature took out through its amendments, *i.e.*, any former implication that charter and district students must be provided the same modes of transportation due to the language in former Section 1726 that transportation must be provided 'on the same terms and conditions.'" *Id.*, *citing Former* 24 P.S. §17-1726.

In closing, the Commonwealth Court acknowledged the safety concerns raised by Propel but concluded it "must presume that the legislature considered the potential safety consequences when it amended the [CSL] to remove, except in Philadelphia,[6] the

---

[5] *See* 24 P.S. §13-1361(1) (requiring school districts that provide free transportation to public school students to make "**identical provision** for the free transportation of pupils who regularly attend **nonpublic**" schools) (emphasis added).

[6] Our focus in this appeal is on subsection (a) of Section 1726-A. Subsection (a.1) of the statute applies "[i]n addition to any other requirements in this section" to "school districts of the first class" — *i.e.*, the Philadelphia School District. *See* 24 P.S. §17-1726-A(a.1). However, because this case does not involve the Philadelphia School District, we do not opine on the Commonwealth Court's statement in *dicta* that subsection (a.1) places
(…continued)

requirement of former Section 1726" to furnish free transportation to charter and district students on the same terms and conditions. *Id.* at 7; *see id*. at 6 ("Despite the concerns of Charter Schools and the students' parents, the ages of students, their need to transfer buses, or the lengths of their bus rides are not legal factors in determining compliance with Section[] 1726-A[(a).]").

Judge Wallace authored a dissenting opinion, joined by Judge McCullough. Judge Wallace asserted the intent of Section 1726-A is to provide charter students with the same free transportation as public students. She explained the original version of the statute did so explicitly, as this Court recognized in *Mosaica*. *See Mosaica*, 813 A.2d at 822 (remarking the General Assembly "went to great lengths to treat the charter schools akin to private schools for purposes of transportation") (emphasis omitted). Although the statute was later amended, in Judge Wallace's view, the removal of the "same terms and conditions" language from Section 1726-A actually expanded charter students' rights. She also warned the majority's contrary interpretation raises constitutional concerns, as it may result in "similarly-situated public school students receiving unequal treatment or in public school students receiving demonstrably worse treatment than students attending religious schools." *Bell III*, 2024 WL 358515, at *9 (Wallace, J., dissenting). To that end, Judge Wallace called for constitutional avoidance. Finally, she concluded Section 1726-A(a) should be construed alongside Section 1361(1) as prohibiting school districts from providing one transportation option to its own students while denying that same option to charter students.

Judge McCullough also authored a dissent, writing separately to emphasize her view that the majority's interpretation of Section 1726-A(a) violates 1 Pa.C.S. §1922(1) (it may be presumed that "the General Assembly does not intend a result that is absurd,

---

district and charter students in Philadelphia "on parallel footing[.]" *Bell III*, 2024 WL 358515, at *3.

impossible of execution or unreasonable"). "Putting aside all other issues of statutory interpretation," she explained, "making a five-year old take two Port Authority Transit buses to get to school, ride with complete strangers, transferring once or twice, increasing the length of her commute, and then making the child do the same thing on the way home, is at best unreasonable, and at worst absurd." *Id*. at *7 (McCullough, J., dissenting).

We granted Propel's petition for allowance of appeal to consider the following question as framed by Propel:

> Whether, in a matter of first impression, the Commonwealth Court erred in interpreting 24 P.S. §17-1726-A to permit unequal treatment of school-aged students in the Commonwealth depending on whether the students are enrolled in a public charter school or in a traditional public school?

*Bell, et al. v. Wilkinsburg Sch. Dist.*, 323 A.3d 588 (Pa. 2024) (*per curiam*).[7]

Propel argues Section 1726-A(a) "is ambiguous. Full stop." Propel's Brief at 19; *see id*. at 20 (describing the second sentence of the statute as "a disjointed mess of misplaced modifiers, exceptions, and provisos"). According to Propel, "[w]hile the Commonwealth Court's plain language interpretation is plausible (at best), . . . it cannot be correct." *Id*. at 23. This is so, Propel submits, because under the Commonwealth Court's interpretation, "the last words in the second exception of the second sentence ('under the same conditions') are redundant" of "the preceding language of the same sentence [which] already says as much." *Id*. at 22, *quoting* 24 P.S. §17-1726-A(a); *see id*. ("the sentence could simply have ended after the words 'charter schools'"). Propel further argues the lower court's interpretation "produces an absurd result." *Id*. at 44; *see id*. at 28 ("It makes no sense that the General Assembly would provide private or religious

---

[7] The standards governing this Court's review of matters of statutory interpretation are well-settled: "[T]he proper interpretation of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Rushing*, 99 A.3d 416, 420 (Pa. 2014).

school students with the same transportation as provided to traditional public school students, but not provide the same transportation to public charter school students.").

Believing the statute to be ambiguous, Propel implores us to "resort to statutory construction to determine what the General Assembly intended." *Id*. at 26. As it did below, Propel specifically emphasizes the statute's history. *See* 1 Pa.C.S. §1921(c)(5) (when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering "the former law, if any"). To summarize, the General Assembly amended the Public School Code in 1997 by adding the CSL. As originally adopted, Section 1726-A(a) provided that charter students attending charter schools in their own districts would be transported "on the same terms and conditions" as public school students.[8] Charter students attending schools outside, but within ten miles of their own districts would receive transportation under Section 1361. Section 1361 provided that transportation of public school students was discretionary; however, if a district provided transportation of its own students, it was required under the statute to make "identical provision" for the transportation of nonpublic students.

Propel explains this Court addressed this earlier statutory scheme in *Mosaica*. There, we recognized Section 1726-A(a) had created some confusion with its reference to Section 1361, which provides for the transportation of **nonpublic** students, whereas charter students are **public** students. Ultimately, we concluded the intent behind former

---

[8] The statute as originally enacted provided as follows:

> Students who reside in the school district in which the charter school is located or who are residents of a school district which is a part of a regional charter school shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to students attending the schools of the same district. Nonresident students shall be provided transportation under section 1361. Districts providing transportation to a charter school outside the district shall be eligible for payments under section 2509.3 for each public school student transported.

*Former* 24 P.S. §17-1726-A(a).

Section 1726-A(a) was for these charter students to be treated the same as nonpublic students under Section 1361 — that is, that the district should make "identical provision" for charter students as it made for traditional public school students. *See Mosaica*, 813 A.2d at 822.

Only weeks before we decided *Mosaica* in 2002, the General Assembly amended Section 1726-A(a).[9] The 2002 amendments eliminated the distinctions between charter students attending school in and out of their districts and replaced it with a right to transportation for charter students on their own terms: it required that charter students attending schools in or within ten miles of the district "shall be provided free transportation to the charter school by their school district of residence." At the same time, the General Assembly removed the "same terms and conditions" language and the reference to Section 1361. To use Propel's words, "the apparent effect of the 2002 [a]mendments was extreme[.]" Propel's Brief at 34. Nevertheless, Propel insists the "pendulum swung back in favor of equal treatment of public charter school students when the General Assembly amended Section 1726-A in 2006." *Id*. That amendment carved out an exception to the "free transportation" requirement imposed by the first sentence of Section 1726-A(a) for students living within one-and-a-half miles (elementary students) or two miles (secondary students) of their schools, barring hazardous conditions as certified by the DOT. But the 2006 amendment also created an exception within the exception: if a district provides transportation to public school students within those distances under nonhazardous conditions, the district must provide transportation to charter students "under the same conditions." Propel argues this caveat "reinstate[d] some of the original text of Section 1726-A providing for transportation equality[.]" *Id*.; *see id*. at 21 ("under

---

[9] Prior to the 2002 amendment, the General Assembly on two other occasions — once each in 1999 and 2000 — amended the statute from its original form. Neither of those amendments are pertinent here.

this second exception . . . the transportation provided to the subclass of public charter school students must be 'under the same conditions' as the transportation to the traditional public schools") (emphasis omitted). Indeed, in Propel's view, based on the statute's history and purpose, "a much more plausible interpretation of Section 1726-A" is as follows:

> [S]tudents who attend a charter school located in their school district of residence or a charter school located outside district boundaries at a distance not exceeding ten (10) miles shall be provided free transportation by their school district of residence to their charter school when such charter school is in session and under the same conditions as free transportation is provided to students who attend schools of the district when schools of the district are in session.

*Id*. at 24-25 (emphasis omitted).

To the extent there is any doubt about how to read the statute, Propel observes the Commonwealth Court recently held the right to public education is a fundamental right under the Pennsylvania Constitution for the purpose of an equal protection challenge. *See id.* at 37, *citing William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 294 A.3d 537 (Pa. Cmwlth. 2023). Since a charter school is, by definition, a public school, Propel claims the question of whether Section 1726-A(a) permits unequal transportation methods for charter school students implicates this fundamental right. Propel thus urges us to "avoid a weighty constitutional challenge that would arise" if we adopted the Commonwealth Court's interpretation by instead applying the canon of constitutional avoidance and "[i]nterpreting the [CSL] to provide for equal treatment and transportation for public charter school students[.]" *Id.* at 42.[10]

---

[10] Propel is supported in this appeal by a "group of charter schools that support . . . the equitable and safe transportation of children attending charter schools." Charter Schools' Brief at 1. *Amici* "fully concur" with Propel "that Section 1726-A is ambiguous" and that the Commonwealth Court's interpretation "violate[s] the constitution by denying charter school students equal protection of the law." *Id*. at 8.

The District responds that while Section 1726-A(a) may be "densely drafted," it is not ambiguous. District's Brief at 17. Instead, says the District, the statute "plainly sets forth distinct obligations regarding transportation based on the residence of the charter student and the existence of hazardous walking conditions." *Id.*; *see id.* at 28 ("the second sentence of Section 1726-A(a) . . . simply defines when public school districts are not required to provide 'free transportation' to charter school students"). Further, the District argues that even though it "may be obvious" that the phrase "under the same conditions" relates back to the phrase "nonhazardous conditions," it still has meaning and is not superfluous. *Id.* at 25. Consistent with the Commonwealth Court's interpretation, the District distills the second sentence of Section 1726-A(a) to read as follows:

> School districts are not required to provide transportation to charter school students: 1) attending charter schools more than 10 miles away from the school district's boundaries; or 2) attending charter schools located within 1.5 (elementary) or 2 (secondary) miles of the students' homes if the walking route is not hazardous and if the school district does not provide transportation to its students under the same conditions.

*Id.* at 29. The District contends this interpretation "is consistent with the plain language of Section 1726-A(a) and gives effect to all of its provisions." *Id.*

Even if the statute were ambiguous, the District argues "legislative history defeats, rather than supports, the interpretation advanced by Propel[.]" *Id.* at 32. According to the District, "by deleting statutory language ('on the same terms and conditions' and 'Section 1361') and replacing it with a defined term ('free transportation'), the General Assembly emphatically announced that the transportation rules had been changed." *Id.* at 37. Indeed, the District suggests Propel merely attempts to "create an ambiguity where none exists because it wants this Court to use the 'under the same conditions' language 'to restore what the legislature took out through its amendments, *i.e.*, any former implication that charter and district students must be provided the same modes of transportation due to the language in former Section 1726 that transportation must be provided 'on the same

terms and conditions.'" *Id*. at 30, *quoting Bell III*, 2024 WL 358515, at *6. However, the District insists, Section 1726-A(a) in its current form "does not require that school districts provide transportation that is identical to the transportation they provide to their students." *Id*. at 29.

Finally, to the extent Propel purports to raise a standalone constitutional claim predicated on the fundamental right to a public education, the District submits such claim is waived because Propel failed to raise it in the trial court, in the Commonwealth Court in *Bell I*, or in this Court in *Bell II*. Moreover, the District observes this Court "did not grant allocatur to review any constitutional question" in this appeal, and the court below "found that such issues were never raised." *Id*. at 47, *citing Bell III*, 2024 WL 358515, at *5 n.5 (finding Propel "has not preserved a constitutional challenge for appeal"). Regarding Propel's invocation of the canon of constitutional avoidance, the District argues it has no application here since Section 1726-A(a) is not susceptible to multiple interpretations. In any event, the District stresses "[t]his case involves transportation, which is not a fundamental right[.]" *Id*. at 49, *citing, e.g.*, *Springfield Sch. Dist. v. Dep't of Educ.*, 397 A.2d 1154, 1169 n. 18 (Pa. 1979) (holding Section 1361's exclusion of transportation opportunities to for-profit private school students did not infringe fundamental rights and applying rational basis review). Plus, the District notes, even the fundamental right to education does not require uniformity. *See id*. at 47-49, *citing, e.g., Danson v. Casey*, 399 A.2d 360, 366-67 (Pa. 1979) (observing the framers of the 1874 Constitution considered and rejected adding a uniformity requirement to the Education Clause, thereby "endors[ing] the concept of local control to meet diverse local needs"); *William Penn Sch. Dist.*, 294 A.3d at 886 ("history demonstrates that the system need not be uniform"). The District concludes that "if the constitution does not require th[e] education

system [to] be uniform, it cannot require th[e] transportation system [to] be uniform." *Id.* at 49.[11]

In reply, Propel argues it "is not now raising new constitutional issues and its arguments properly asserted under the issue of constitutional avoidance may be considered by this Court." Propel's Reply Brief at 3. Yet, at the same time, Propel remarks that "the issue of the potential violation of Propel students' fundamental right to an education . . . was unable to be made until 2023" when *William Penn* was decided. *Id.* at 9. Propel posits that "[w]here, as here, a fundamental change in the law occurs after the lower court enters its order, but before the appellate court rules, the failure to raise the issue in the lower court will not preclude appellate review of that issue." *Id.* at 10, *citing Kuchinic v. McCrory*, 222 A.2d 897 (Pa. 1966).

The object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). "The plain language of a statute generally provides the best indication of legislative intent." *Commonwealth v. Lehman*, 243 A.3d 7, 16 (Pa. 2020). As such, "'[w]hen the words of a statute have a plain and unambiguous meaning,' we are bound to apply them, as written, and we cannot disregard those words 'under the pretext of pursuing [the statute's] spirit.'" *Commonwealth v. Strunk*, 325 A.3d 530, 545 (Pa. 2024), *quoting* 1 Pa.C.S. §1921(b); *see Commonwealth v. Rosario*, 294 A.3d 338, 347 (Pa. 2023) ("Only when the words of a statute are not explicit will we resort to other considerations to discern legislative intent.") (internal quotations and citation omitted).

---

[11] The Pennsylvania School Board Association ("PSBA") filed a brief in support of the District. It argues Section 1726-A(a) grants "school districts autonomy to determine the transportation methods that best suit their unique logistical, geographical, and financial circumstances." PSBA's Brief at 3. According to PSBA, the "legislature's deliberate removal of any requirement for identical transportation underscores a recognition that a uniform, one-size-fits-all approach is neither practical nor sustainable for Pennsylvania's school districts." *Id.*

Cognizant of this mandate, we begin with the language of Section 1726-A(a). The first sentence of the statute provides:

> Students who attend a charter school located in their district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway **shall be provided free transportation** to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district.

24 P.S. §17-1726-A(a) (emphasis added). There is only one possible interpretation of this sentence, and the parties do not dispute it: students attending a charter or regional charter school in their district of residence, or a charter school located outside but within 10 miles of a district by the nearest public highway, "shall be provided free transportation" by that district. *Id*. A district must provide this free transportation to charter students whenever "the charter school is in regular session[,]" regardless of whether the district is also in session. *Id*. School-district-provided free transportation for charter students on the days they have school is, indisputably, a mandatory requirement. *See Rosario*, 294 A.3d at 348 ("The word 'shall' commonly connotes a mandatory requirement.").

The real dispute is over the statute's second sentence. It states in full:

> Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions.

24 P.S. §17-1726-A(a). Taking it in parts, the second sentence begins by creating an exception to the general duty imposed on districts by the first sentence to provide "free

transportation" to charter students. Specifically, the exception makes clear that a district is **not** required to provide free transportation for elementary students (including kindergarten students) who reside within one and one-half miles from the charter school,[12] or for secondary students who reside within two miles from the charter school.

However, the next part of the second sentence goes on to create an exception to that exception, as indicated by its use of the subordinating conjunction "unless." It states: "unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation[.]" *Id*. Thus, this part of the statute provides that if the DOT certifies that walking a distance of one and one-half miles (for elementary students) or two miles (for secondary students) would constitute a hazard to the safety of students, the district must provide free transportation to those students.

---

[12] In passing, Propel argues this part of the statute "has the effect of creating an exception to swallow the rule because most students live within 1.5 miles of a public highway and, therefore, most students would not be entitled to free transportation." Propel's Brief at 21; *see id*. at 20-21 ("this subclass is defined by a student's proximity to a public highway; [it] is not defined by a student's proximity to their charter school") (emphasis omitted). But, as the District aptly responds, this argument "ignores crucial language from the statute[.]" District's Brief at 26. That language makes clear the exception applies only to elementary students "within one and one-half (1.5) miles . . . **of** the nearest public highway **from the charter school**[.]" 24 P.S. §17-1726-A(a) (emphasis added). The measurement is plainly based on a student's proximity to the charter school, not just a "public highway." To the extent there was any serious doubt about this, *see* District's Brief at 26 (explaining "this interpretation has not been adopted by either party in this case" or "by any court"), a different statute — one Propel neglects entirely — details the process for the "computation of distances" for purposes of the Public School Code. *See* 24 P.S. §13-1366 ("Where, by the terms of this act, or any other act, any distance is specified between the residence of any pupil and any public school to be attended by him, or any transportation is provided for within or beyond any particular distance, in computing such distance no allowance shall be made for the distance that the dwelling house of the pupil is situated off the public highway. All such distances shall be computed by the public highway from the nearest point where a private way or private road connects the dwelling house of the pupil with the highway to the nearest point where said highway touches the school grounds of the school to which the pupil has been assigned.") (footnote omitted).

This brings us to the last part of the second sentence, which provides: "except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions." *Id.* The phrase "except that," like the word "unless," introduces another exception to the general exception that districts need not provide free transportation to students living within a certain distance of a charter school. However, unlike the previous exception to the main exception, which pertains to hazardous conditions, this one concerns only "nonhazardous conditions." More precisely, under this exception, "if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions" — which, as discussed above, it is not statutorily required to do — then "transportation shall also be provided to charter schools **under the same conditions**." *Id*. (emphasis added).

Here is where Propel and the dissent claim to find ambiguity. According to Propel, reading the phrase "under the same conditions" to refer to the conditions immediately preceding it — *i.e.*, the transportation of elementary students living within one and one-half miles of school, or secondary students living within two miles of school, when the roads are safe — renders the phrase "redundant" because "the sentence could simply have ended after the words 'charter schools.'" Propel's Brief at 22; *see also* Dissenting Opinion at 2 (arguing our interpretation "renders the phrase 'under the same conditions' in the statute's second sentence redundant"). Not so. Consider Propel's abridged version: "if the school district provides transportation to the public schools of the school

district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools[.]"  As can be seen, absent the phrase "under the same conditions," it is unclear to whom exactly transportation shall also be provided.  For example, if a district provides transportation only to public school elementary students residing within one and one-half miles under nonhazardous conditions, must it also provide free transportation to charter secondary students, in addition to charter elementary students?  The statute doesn't specify under Propel's reading; it simply and vaguely states "that transportation shall also be provided to charter schools[.]"  It's easy to see how removing the qualifier has the potential to greatly expand the statute's reach.

On the other hand, reading "under the same conditions" as referring back to the conditions described in the context of that particular exception — *i.e.*, as applying only to students who reside within a safe, closer distance to the charter school — leaves no doubt about who is covered by the exception.  It also makes the most sense, grammatically and otherwise.  The General Assembly used the specific phrase "nonhazardous **conditions**" and then, only eight words later within the same sentence, used the phrase "under the same **conditions**."  It would be strange, to say the least, to conclude this latter phrase has nothing whatsoever to do with the immediately preceding phrase using the exact same word.  Surely the General Assembly would have used a different, clearer phrase if that's what it had intended — for example, "on the same terms," as the statute previously stated, or "identical provision," as other statutes currently provide.  *See* 24 P.S. §13-1361(1) (requiring school districts that provide free transportation to public school students to make "identical provision for the free transportation of pupils who regularly attend nonpublic" schools).

Propel's argument also runs counter to the statute's structure. As demonstrated above, the first sentence of the statute plainly explains **what** and **when** a school district must provide qualifying charter students: "free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session[.]" 24 P.S. §17-1726-A(a). Meanwhile, the second sentence, despite being somewhat unwieldy, plainly details **who** qualifies for this free service: (1) elementary students residing more than one and one-half miles away from the charter school; (2) secondary students residing more than two miles away from the charter school; (3) elementary and secondary students residing within those respective distances if the DOT has certified that walking constitutes a hazard to the safety of the students; and (4) elementary and secondary students residing within those respective distances under nonhazardous conditions if the school district provides transportation to the public schools under the same conditions. Against this clear structure, Propel asks us to find that within a fragment of a sentence pertaining to **who** is entitled to free transportation, the General Assembly slipped in a critical caveat about **what** the statute requires of school districts. Respectfully, this tortured reading is not "eminently reasonable[.]" Dissenting Opinion at 3. It is untenable. Again, had the General Assembly intended to require identical transportation between charter and public school students, it could have easily said so — and presumably would have done so in the first sentence of the statute, not the second, by simply inserting the word "identical" between "free transportation."

Despite Propel's best efforts to conjure up an ambiguity in Section 1726-A(a), our review of the statute's plain text reveals none. True, the statute is "densely drafted[.]" District's Brief at 17. But dense does not always mean ambiguous. Nor do we find any purchase in Propel's argument this interpretation "produces an absurd result." Propel's Brief at 44; *see id*. at 28 ("It makes no sense that the General Assembly would provide

private or religious school students with the same transportation as provided to traditional public school students, but not provide the same transportation to public charter school students."); *see also* Dissenting Opinion at 4 n.1 (contending our "interpretation 'is at best unreasonable, and at worst absurd'"), *quoting Bell III*, 2024 WL 358515, at *7 (McCullough, J., dissenting). As we stressed in *Bell II*, and repeat today, we do not mean to "minimize the important concerns" Propel, its *amici*, and the dissent "highlight, in support of their statutory argument, regarding the perceived safety advantages of transporting students by school bus over a common carrier." *Bell II*, 283 A.3d at 257 n.15. But these concerns, "at their core, involve policy judgments, and, as such, were presumably carefully considered by the General Assembly when it permitted student transportation by common carrier under Section 13-1362 of the Public School Code[.]" *Id*. That such policy judgments may appear absurd to some is not enough to render the statute ambiguous. *See Commonwealth v. Green*, 291 A.3d 317, 330 (Pa. 2023) (if "the application of the clear language of [a] statute does not cause results that were not contemplated[,]" the "result is not absurd"). As such, and absent some constitutional infirmity with the statute, which we have no occasion to consider in this appeal,[13] "[i]t is not this Court's role to supplant those policy determinations." *Bell II*, 283 A.3d at 257 n.15.

---

[13] To the extent Propel purports to raise a standalone constitutional claim in this appeal, the court below deemed it waived, and we did not grant review to consider any such issue in any event. As for Propel's reliance on the constitutional avoidance canon, *see* 1 Pa.C.S. §1922(3), and the dissent's claim our interpretation "raises serious constitutional issues," Dissenting Opinion at 4, we have explained that, where statutory language is "clear and unambiguous, we do not reach this aspect of statutory construction." *Commonwealth v. Gamby*, 283 A.3d 298, 317 (Pa. 2022). That is the case here. This is not a circumstance in which "the parties offer two competing, but reasonable, statutory interpretations, and the court is tasked with choosing between them." *Id*. at 317 n.20. The plain text of Section 1726-A(a) is susceptible to only one reasonable interpretation, as detailed above.

In sum, like the courts below, we conclude the statutory language of Section 1726-A(a) "is clear on its face," and, thus, we "are bound to uphold it as drafted." *Bell III*, 2024 WL 358515, at *7. That language entitles charter students to "free transportation" to be provided by their school district, but it does not mandate the district afford the same mode of transportation for all students.

The order of the Commonwealth Court is affirmed.

Chief Justice Todd and Justices Donohue, Wecht and MCaffery join the opinion.

Justice Mundy files a dissenting opinion.

Justice Brobson did not participate in the consideration or decision of this matter.